1
2
3
4                        UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    DANIEL PRISTAVEC, et al.,              Case No.  21-cv-04458-EMC

8                    Plaintiffs,

9            v.                             **ORDER GRANTING DEFENDANTS'**
                                            **MOTION TO DISMISS SECOND**
10   MENO HOLDINGS SPV, LP, et al.,         **AMENDED COMPLAINT**

11                   Defendants.            Docket No. 41

12

13

14                          I.        **INTRODUCTION**

15          This case concerns the purchase and sale of Daniel Pristavec and Justin Hauge's

16   ("Plaintiffs") shares of restricted Airbnb stock.  *See* Second Amended Compl. ("SAC") ¶¶ 8-9;

17   Docket No. 40.  Further, Plaintiffs specifically contend that their respective contracts with

18   Defendants violated Section 12 of the Securities Act and as such, they are entitled to recission and

19   to receive all consideration paid for the securities at issue with interest.  Plaintiffs also allege,

20   among other things, that Meno violated Section 5 of the Securities Act and materially breached its

21   contracts thereby rendering the sale of the securities illegal and excusing Plaintiffs' performance.

22   *See id* ¶¶ 18-36.  As a predicate to their Securities Act claims, Plaintiffs allege that the contracts

23   between Defendants Meno Holdings SPV, LP ("Meno") and Adit Ventures, LLC ("Adit") and

24   Plaintiffs were not only forward purchase contracts, but also contracts for purchase of put options.

25   *See id*. ¶¶ 10-13.  In addition to their Securities Act claims, Plaintiffs assert a state law claim that

26   Defendants tortiously interfered with Plaintiff's respective contracts with Fidelity Investments and

27   argue in the alternative that Meno materially breached the Meno Contracts.  *Id*. ¶¶ 13, 37-41.

28          Currently pending before the Court is Defendants' motion to dismiss Plaintiff's second

United States District Court
Northern District of California

amended complaint for lack of subject matter jurisdiction (as there is no viable federal claim), lack of personal jurisdiction, and failure to state a claim.  Mot. to Dismiss ("MTD"); Docket No. 41. For the following reasons, the Court **GRANTS** Defendants' motion to dismiss.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On May 24, 2021, Plaintiffs filed their initial complaint for declaratory judgment and tortious interference with a contract against Defendants in this Court, claiming that jurisdiction was proper under 28 U.S.C. § 1332 (Diversity Jurisdiction).  Complaint ¶ 5; Docket No. 1.  On July 9, 2021, Meno commenced action against Plaintiffs in New York Supreme Court for breach of forward purchase contracts.  MTD at 3; *see Meno Holdings SPV, LP v. Hauge*, No. 654283/2021 (N.Y. Sup. Ct. July 9, 2021); *Meno Holdings SPV, LP v. Pristavec*, No. 654284/2021 (N.Y. Sup. Ct. July 9, 2021).  Additionally, on July 14, 2021, Defendants filed their motion to dismiss the initial complaint in this Court for lack of subject matter jurisdiction, alleging that the parties were not diverse, lack of personal jurisdiction, and improper venue.  Initial MTD; Docket No. 22.

On July 28, 2021, Plaintiffs filed their first amended complaint ("FAC") for declaratory judgment and tortious interference with contract and claimed that this Court had subject matter jurisdiction under 18 U.S.C. § 1331 (Federal Question Jurisdiction) because the right to relief necessarily depended on the resolution of a substantial question of federal law involving the Securities Act.  FAC ¶ 5; Docket No. 24.  As for a claim specifically involving the Securities Act, Plaintiffs sought a declaration that Meno violated Section 4(a)(2) of the Securities Act (which provides an exemption from the provisions of Section 5 of the Securities Act for "transactions by an in issuer not involving any public offering") by entering into contracts or other arrangements for the sale, transfer, distribution, and/or grant of participation in the Airbnb Shares.  FAC ¶ 16, 21.  On September 10, 2021, Defendants filed a motion to dismiss the FAC, claiming lack of subject matter jurisdiction since "Plaintiffs now seek to manufacture federal question jurisdiction by grafting inapplicable and immaterial references to federal securities laws onto a purely state law breach of contract action," lack of personal jurisdiction, and failure to state a claim for tortious inference.  Second MTD at 1; Docket No. 30.

United States District Court
Northern District of California

On November 2, 2021, Plaintiffs filed a motion for leave to file a seconded amended complaint.  Mot. for Leave; Docket No. 35.  On November 15, 2021, Defendants filed a statement of non-opposition to Plaintiffs' motion for leave to file a second amended complaint.  Docket No. 38.  Having reviewed Plaintiffs' motion for leave and Defendants' statement of non-opposition, the Court granted the motion for leave in light of the strong public policy permitting amendment.  Clerk's Notice; Docket No. 39.

On November 18, 2021, Plaintiffs filed the operative SAC.  In the SAC, Plaintiffs state that Daniel Pristavec is domiciled in the state of Washington and Justin Hauge is domiciled in the state of Florida.  SAC ¶¶ 1-2.  They believe that Meno "is a limited partnership duly organized and existing under the laws of the state of Delaware with its principal place of business in New York, New York."  *Id.* ¶ 3.  Additionally, Plaintiffs allege that Adit "is a limited liability company duly organized and existing under the laws of the state of Delaware with its principal place of business in New York, New York . . . and believe . . . Adit's members are domiciled in the state of New York."  *Id.* ¶ 4.  Plaintiffs note that both Meno and Adit have appeared in this lawsuit.  *Id.* ¶¶ 3-4.

Like in the FAC, Plaintiffs contend that this Court has federal subject matter jurisdiction under 28 U.S.C. § 1331 because their "right to relief necessarily depends on the resolution of a substantial question of federal law."  *Id.* ¶ 5.  Plaintiffs specifically note that 15 U.S.C. § 77v grants the Court jurisdiction of "'offenses and violations'" arising under the Securities Act of 1933 ("Securities Act") and "'regulations promulgated'" by the United States Securities and Exchange Commission and "'all suits in equity and actions at law brought to enforce any liability or duty'" created by the Securities Act.  *Id.*  Additionally, Plaintiffs argue that the Court has supplemental jurisdiction over their remaining state law claims (tortious interference with contract and alternative claim that Defendants materially breached the Meno Contracts) under 28 U.S.C. § 1367 because they form the same case or controversy as their claims arising under federal law, including the Securities Act.  *Id.*

Plaintiffs claim that the Court has personal jurisdiction over the parties under California Code of Civil Procedure section 410.10 (Long-Arm statute) because Meno and Adit have sufficient minimum contacts with the state of California, and the causes of action set forth herein

arise from acts and omissions that occurred primarily and substantially in the state of California. *Id.* ¶ 6. "Specifically, Adit, on behalf of Meno, entered into contracts for the purchase and sale of securities involving a company headquartered in San Francisco, California, to San Francisco, California residents pursuant to a contract negotiated in San Francisco, California that fixed performance in San Francisco, California." *Id.* Plaintiffs also note that the Securities Act provides for nationwide service of process and the sale of securities at issue took place in California. *Id.* Additionally, Plaintiffs state that venue is proper in this district "because the events giving rise to Plaintiffs' claims occurred in this district" . . . and "15 U.S.C. § 77v provides that venue is proper because this Court is in the district where the offer and sales of the securities of the issue took place." *Id.* ¶ 7.

Notably, Plaintiffs state that they were the twelfth and thirteenth employees with Airbnb, a vacation rental company that was founded in San Francisco and that Airbnb granted them stock options to reward their loyal employment. *Id.* ¶ 8. Plaintiffs exercised the stock options to purchase Airbnb restricted stock. *Id.* In February 2017, while Airbnb was still privately-held, third-party brokers on Plaintiffs' behalf solicited Meno for the purchase and sale of restricted securities derived from these Airbnb shares. *Id.* ¶ 9. At that same time, third-party brokers solicited Adit's predecessor, PSP Ventures II, LLC ("PSP"), for the purchase and sale of restricted securities derived from these Airbnb shares. *Id.* "Meno and PSP thereafter initiated discussions with Pristavec and Hauge—at the time residents of California and living and working in San Francisco until September 2019 and August 2017, respectively—regarding the purchase and sale" of the restricted securities derived from their Airbnb shares (collectively "Securities"). *Id.* "Pristavec and either Adit or PSP, on behalf of Meno, thereafter signed a series of agreements on February 13, 2017, November 8, 2018, February 24, 2020, and October 5, 2020 ('Meno-Pristavec Contracts')." *Id.* ¶ 10. "Similarly, Hauge and either Adit or PSP, on behalf of Meno, thereafter also signed a series of agreements on February 6, 2017, February 3, 2020, and November 10, 2020 ('Meno-Hauge Contracts' and, together with Meno-Pristavec Contracts, 'Meno Contracts')." *Id.*

Plaintiffs claim that under each of the respective Meno Contracts, "Meno represented and warranted that as of the date the parties signed the Meno Contracts and the 'Transfer Date' for the

4

1   Securities (which was expressly contingent on the occurrence of conditions precedent):

- [Meno] is purchasing the [Securities] solely for investment purposes, and not with a view to, or for resale in connection with, any 'distribution' of the [Securities] within the meaning of the Securities Act.  Its entire legal and beneficial ownership interest in the [Securities] will be purchased and will be held solely for its account.  Purchaser is not a party to, and does not presently intend to enter into, any contract or other arrangement with any other person or entity involving the resale, transfer, grant of participation with respect to or other distribution of any of the [Securities].

- [Meno] understands that the purchase of the [Securities] are "restricted securities" under applicable U.S. federal and state securities laws.  Purchaser understands that the sale of the [Securities] to it will not be registered under the Securities Act in reliance upon an exemption for non-public offerings.

- [Meno] must hold the [Securities] indefinitely, unless any subsequent proposed release by it is registered under the Securities Act, or unless an exemption from registration is otherwise available (such as Rule 144)[.]

- [Meno] is familiar with Rule 144 adopted under the Securities Act, which in some circumstances permits limited public resales of "restricted securities" like the shares acquired from an issuer in a non-public offering.

- [Meno] understands that in the event Rule 144 is not available to it, any future proposed sale of any of the [Securities] by it may not be possible without prior registration under the Securities Act, compliance with some other registration exemption (which may or may not be available)[.]

- At no time was [Meno] presented with or solicited by any publicly issued or circulated newspaper, mail, radio, television or other form of general advertising or solicitation in connection with the offer, sale and purchase of the [Securities].

*Id*. ¶ 11.  Plaintiffs allege that contrary to its representation, "Meno entered into contracts with other persons, including investors, for the transfer, grant of participation with respect to, and/or other distribution of the Securities, or, alternatively, the Airbnb Shares, at the time the Meno Contracts were signed."  *Id*. ¶ 12.  Plaintiffs believe that Meno is still a party to contracts and other arrangements with other persons for the transfer, grant of participation with respect to, and/or other distribution of the Securities, or alternatively, the Airbnb Shares, and intend to perform under the same."  *Id*.  Plaintiffs claim that this conduct violates the Securities Act and Meno's representation and warranties under the Meno Contracts.  *Id*.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8

Additionally, Plaintiffs state that on May 21, 2021, Adit instructed Fidelity Investments to place a hold on Plaintiffs' accounts. *Id* ¶ 13. Plaintiffs note that the "hold instruction was issued to Fidelity despite the fact that only Fidelity and Pristavec, and Fidelity and Hauge, are parties to the contracts governing [those] accounts, [and] only *some*—not all—of Plaintiffs' investments were commingled." *Id*. Plaintiffs claim that this "misconduct required Plaintiffs to incur costs and expend resources to receive performance that was already owed to them under these contracts with Fidelity." *Id*. As such, Defendants interfered with Plaintiffs' performance and enjoyment of their Fidelity contracts, "rendering each more burdensome and costly." *Id*.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Based on the aforementioned allegations, Plaintiffs assert eight causes of action against Defendants. In their first cause of action, Plaintiffs specifically allege that Meno sold them securities pursuant to the Meno Contracts that were required to be registered under Section 5 of the Securities Act or to qualify for an exemption from registration and that Meno did not registered the securities and an exemption does not apply. *Id.* ¶¶ 15-16. As such, Plaintiffs claim that they are entitled to recission and to receive all consideration paid for the securities with interest thereon under Section 12. *Id*. ¶ 17. Relatedly, in their second cause of action, Plaintiffs specifically claim that they sold Meno restricted securities that were required to be registered under Section 5 or to qualify for an exemption from registration and that the sale of the securities were not registered and did not qualify for an exemption in violation of Section 5. *Id.* ¶¶ 19-22. As such, they seek a declaration that the Meno Contracts are illegal, void, and unenforceable. *Id*. ¶¶ 18-25. In their third cause of action, Plaintiffs claim that Meno materially breached the Meno Contracts because Meno's alleged breaches rendered the sale of the Securities illegal under Section 5 of the Securities Act and as such, they seek a declaration that (1) Meno materially breached the Meno Contracts, and (2) the material breaches excuse Plaintiffs' performance, if any, under the Meno Contracts. *Id*. ¶¶ 26-31. In their fourth cause of action, Plaintiffs seek a declaration that: "(1) Plaintiffs purchased an option to sell Meno the Airbnb shares if Airbnb became publicly traded, (2) This option to sell is a "put" that is a "security" under the Securities Act, and (3) Plaintiffs are not required to sell or otherwise transfer the Airbnb shares to Meno." *Id*. ¶ 34.

1    In their fifth, sixth, and seventh causes of action, Plaintiffs seek, in the alternative,

2  declarations that:  (1) Meno materially breached a representation under the Meno Contracts and,

3  therefore, at least one condition precedent to transfer of the Airbnb shares has not been satisfied

4  (*id*. ¶ 39); (2) the Meno Contracts are illegal because they violate Section 5 of the Securities Act,

5  and as such, are void and unenforceable (*id*. ¶ 47); and (3) Meno materially breached the Meno

6  Contracts because Meno's breaches rendered the sale of the Airbnb shares illegal under Section 5

7  of the Securities Act and these material breaches excuse Plaintiffs' performance, if any, under the

8  Meno Contracts (*id*. ¶ 53).

9    Lastly, in their eighth cause of action, Plaintiffs specifically claim that Meno and Adit

10  tortiously interfered with Plaintiffs' respective contracts with Fidelity Investments and as such,

11  they are entitled to damages against Meno and Adit to reimburse Plaintiffs for the harm suffered,

12  with interest prescribed thereon at the legally permitted rate.  *Id*. ¶¶ 57-58.

13    On December 2, 2021, emphasizing that the "original complaint made no mention of

14  federal law" and claiming that this "lawsuit is a case of sellers' remorse," Defendants moved to

15  dismiss Plaintiffs' SAC for lack of subject matter jurisdiction, failure to allege a basis for personal

16  jurisdiction, and failure to state a claim for tortious interference.  MTD at 1.  On December 16,

17  2021, Plaintiffs filed their opposition.  Opp'n; Docket No. 44.  On December 23, 2021,

18  Defendants filed their reply.  Reply; Docket No. 45.  The Court held a hearing on Defendants'

19  motion to dismiss on February 3, 2022.

20                                    **III.    LEGAL STANDARD**

21  A.    Lack of Subject Matter Jurisdiction (Rule 12(b)(1))

22    Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction.

23  A Rule 12(b)(1) jurisdictional attack may be factual or facial.  *See Safe Air for Everyone v. Meyer*,

24  373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack," "the challenger asserts that the

25  allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

26  *Id.*  The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):

27  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's

28  favor, the court determines whether the allegations are sufficient as a legal matter to invoke the

7

court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1038.  In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

Dismissals premised on federal question jurisdiction are "exceptional" and warranted where the alleged federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." Id. (citation and internal quotation marks omitted).  Notably, in *Safe Air for Everyone*, the Ninth Circuit stated that, "we have held that a '[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action.'" *Id.* (citation omitted).  Moreover, "when a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiffs' substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper *only when the allegations of the complaint are frivolous*." *Thornhill Publ'g Co. v. Gen. Tel. Co.*, 594 F.2d 730, 734 (9th Cir. 1979) (quotation omitted) (emphasis added).

## IV. <u>DISCUSSION</u>

A.   <u>Federal Question Jurisdiction</u>

As an initial matter, the Court must assure itself that this case falls within its jurisdiction. Plaintiffs allege that their Securities Act claims give this Court federal question jurisdiction under 28 U.S.C. § 1331.  Plaintiffs further allege that this Court has supplemental jurisdiction over their remaining state court claim for tortious interference with contract under 28 U.S.C. § 1367.

Although Plaintiffs cite federal statutory provisions, those references do not automatically confer subject matter jurisdiction on this court via 28. U.S.C. § 1331.  The United States Supreme Court has recognized that a "plaintiff properly invokes § 1331 jurisdiction" by pleading "a colorable claim 'arising' under the Constitution or laws of the United States." *Arbaugh v. Y & H*

*Corp.*, 546 U.S. 500, 513 (2006).  The Supreme Court explained that "[a] claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'"  *Id.* n. 10 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)); *accord Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)); *Bell v. Hood*, 327 U.S. at 682–83 ("a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."); *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1342 (9th Cir. 1981) (same).

This Court recognizes that it must be careful to distinguish between a Rule 12(b)(6) dismissal of a case based on a plaintiff's failure to state a claim and a Rule 12(b)(1) dismissal based on a determination that the asserted federal claims are immaterial, insubstantial, or frivolous and asserted solely to obtain jurisdiction.  The Court here considers the history of this case, the contents of the filings in this case (including the contracts at issue), and the parties statements made at the hearing on this matter.

       1.    <u>Added Solely to Manufacture Jurisdiction</u>

Defendants broadly argue that federal subject matter jurisdiction is lacking as to Plaintiffs' causes of action which assert Section 12 and Section 5 violations of the Securities Act (I-VII) "because the federal issues Plaintiffs seek to raise are superfluous to the core breach of contract dispute, and are therefore insufficient to raise substantial federal questions under the well-pleaded complaint rule."  MTD at 4.  Defendants emphasize that Plaintiffs "new 'put-option' theory" was "brought solely for the purpose of obtaining jurisdiction over Meno and Adit" and as such, does not remedy the "fatal jurisdictional defect.  *Id*.

United States District Court
Northern District of California

In *Erum v. Cty. of Kauai*, No. 08-00113 SOM-BMK, 2008 WL 763231, at *1 (D. Haw. Mar. 20, 2008), *aff'd*, 369 F. App'x 843 (9th Cir. 2010), the district court found that it lacked federal question jurisdiction over the plaintiff's federal claims that were asserted for the first time in his amended complaint.  The court concluded that "his claims, while citing federal statutes, [were] immaterial, insubstantial, and frivolous, and made solely for the purpose of manufacturing federal question jurisdiction under 28 U.S.C. § 1331."  *Id.*  The district court emphasized that the plaintiff's amended complaint was identical to the original complaint, but that the plaintiff had added 28 U.S.C. § 1983 claims based on alleged direct violations of the First Amendment and the Fourteenth Amendment's due process clause.  *Id.* at *3.  Additionally, the plaintiff added a claim alleging a violation of 42 U.S.C. § 1985(3).  The court noted that at the hearing, the plaintiff conceded that "he actually ha[d] no claim under § 1985(3) and that that claim should have alleged another § 1983 violation."  *Id.*  Further, at the hearing the plaintiff also "suggested dropping a party to create diversity jurisdiction or asserting an equal protection claim even though he conceded that he was not treated differently because he was a member of some protected class." *Id.* at *4.  The court also noted that the plaintiff's original complaint was dismissed for lack of subject matter jurisdiction and that he has "so far been unsuccessful in related state court proceedings . . . ."  *Id.*  The court concluded that "his statements at the hearing . . . demonstrate[d] his desire to enter this forum by any means possible . . . ."  *Id.*  As such, based on the "history of this case, the contents of the filings in this case, and [the plaintiff's] statements made at the hearing on this matter," the court found that the plaintiff's purported federal claims asserted in his amended complaint were "immaterial, insubstantial, and frivolous, and made solely for the purpose of obtaining federal question jurisdiction."  *Id.*  Notably, the court went on to conclude that the plaintiff's First Amendment claim, Fourteenth Amendment claim, and § 1985(3) claims were not colorable.  *Id.* at *5-8.  Further, since the court dismissed the plaintiff's purported federal claims for lack of subject matter jurisdiction, it declined to exercise supplemental jurisdiction over his remaining state law claims.  *Id.* at *9.

Similarly, in *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 298 (7th Cir. 2003), the plaintiff "alleged a violation of the federal RICO statute by virtue of mail fraud under 18

10

U.S.C. § 1341" as the sole basis for invoking federal question jurisdiction.  The Seventh Circuit noted that the plaintiff was a "compulsive gambler who gambled away his life savings at Casino Aztar" and sued the defendants in federal court, alleging violations of the RICO statute and other state law claims.  *Id*. at *296.  The district court granted summary judgment to the defendants on all of his claims and the plaintiff appealed one aspect of the ruling.  *Id.*  Notably, the Seventh Circuit found the plaintiff's "RICO claim to be frivolous and alleged solely to invoke the jurisdiction of the federal courts," and vacated the district court's judgment and dismissed the lawsuit "for want of subject-matter jurisdiction.  *Id.*  The court acknowledged that "in many circumstances [the plaintiff's] 'failure to prove his contentions [would] not deprive a court of jurisdiction,'" but since "his RICO theory 'is *so* feeble, so transparent an attempt to move a state-law dispute to federal court . . . that it does not arise under federal law at all.'"  *Id.* at 299 (quoting *Oak Park Trust & Sav. Bank v. Therkildsen*, 209 F.3d 648, 651 (7th Cir. 2000) (emphasis in original).  Further, the court noted that at oral argument, the plaintiff's counsel "all but conceded that he lacked a good faith basis for bringing a RICO claim" and as such, was "unpersuaded by his rhetoric" and found "this case to be exactly the type of bootstrapping use of RICO that federal courts abhor."  *Id.* at * 300.  The Court explicitly noted that "it did not find [the plaintiff's RICO claim] to be a 'nonfrivolous argument for the extension [or] modification . . . of existing law or the establishment of new law.'"  *Id.* (quoting Fed. R. Civ. P. 11(b)(2)).

    In contrast to *Erum* and *Williams*, the district court in *Jolly v. Intuit Inc.*, 485 F. Supp. 3d 1191, 1199-1202 (N.D. Cal. 2020), *appeal dismissed*, No. 20-16924, 2020 WL 9073360 (9th Cir. Nov. 2, 2020) found that it had subject matter jurisdiction since the plaintiffs' Sherman Act claims were not clearly added solely to manufacture jurisdiction and were not wholly frivolous.  The court concluded that the plaintiffs' "last-minute addition of [the Sherman Act] claims f[ell] far short of the evidence of bad faith that defeated federal jurisdiction" in *Erum*.  *Id*. at *1199.  The court noted that unlike in *Erum*, there was "no indication that [the] [p]laintiffs [] made similarly incriminating statements and . . . at least some of their federal claims [were] colorable."  *Id*.  Additionally, the court emphasized that the plaintiffs did not make "statements suggesting [that their Sherman Act] claims were added solely to manufacture jurisdiction."  *Id*.  The court went on

United States District Court
Northern District of California

United States District Court
Northern District of California

1    to analyze the Sherman Act claims and emphasized that "[a] claim that fails to meet the pleading

2    requirements of Rule 12(b)(6) is not necessarily so frivolous that it cannot support federal question

3    jurisdiction." *Id.* at *1201.  Moreover, the court concluded that the "[p]laintiffs ha[d] a 'colorable'

4    price-fixing argument that [was] not 'so insubstantial, implausible, foreclosed by prior decisions

5    of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal

6    controversy.'" *Id.* (quoting *Oneida Indian Nation of N. Y.*, 414 U.S. at 666).  As such, since the

7    Sherman Act claims "were not solely added for the purpose of obtaining jurisdiction and [were]

8    not frivolous," the Court concluded that it had subject matter jurisdiction.  *Id.* at *1202.

9         As noted above, Plaintiffs' initial complaint for declaratory judgment and tortious

10   interference with a contract alleged diversity jurisdiction as the sole basis for the Court's subject

11   matter jurisdiction.  Notably, on July 9, 2021, Meno commenced action against Plaintiffs in New

12   York Supreme Court for breach of forward purchase contracts and on July 14, 2021, Defendants

13   moved to dismiss the initial for lack of subject matter jurisdiction, alleging that the parties are not

14   diverse.  Initial MTD; Docket No. 22.  In their July 28, 2021 FAC, for the first time, Plaintiffs

15   allege that this Court has subject matter jurisdiction under 18 U.S.C. § 1331 (Federal Question

16   Jurisdiction) because the right to relief necessarily depends on the resolution of a substantial

17   question of federal law involving the Securities Act.  FAC ¶ 5; Docket No. 24.  As for their

18   Securities Act claim, Plaintiffs sought a declaration that Meno violated Section 4(a)(2) of the

19   Securities Act by entering into contracts or other arrangements for the sale, transfer, distribution,

20   and/or grant of participation in the Airbnb Shares.  FAC ¶¶ 16, 21.  Again, Defendants moved to

21   dismiss based on lack of subject matter jurisdiction since "Plaintiffs now seek to manufacture

22   federal question jurisdiction by grafting inapplicable and immaterial references to federal

23   securities laws onto a purely state law breach of contract action," lack of personal jurisdiction, and

24   failure to state a claim for tortious inference.  Second MTD at 1; Docket No. 30.  Similar to the

25   plaintiff in *Erum* who only added his federal claims after his initial complaint was dismissed for

26   lack of diversity jurisdiction, only after Meno commenced action against Plaintiffs in New York

27   Supreme Court for breach of forward purchase contracts and Defendants moved to dismiss twice

28   for lack of subject matter jurisdiction (first for lack of diversity and second for lack of federal

question) and after having been granted leave to file a second amended complaint did Plaintiffs allege the Section 12 and Section 5 violations of the Securities Act and claim that the Court has federal question subject matter jurisdiction based on these allegations.  Although the Plaintiffs' did not make incriminating statements about their motive for adding their purported federal claims like the plaintiff *Erum* and their counsel did not concede a good faith basis for the claims like in *Williams*, the Court still finds that these Securities Act claims were "made solely for the purpose of obtaining jurisdiction" given the timing of the allegations and their frivolity which is discussed below.  *See Bell v. Hood*, 327 U.S. at 682–83.

### 2.    Wholly Frivolous

Plaintiffs contend that they "adequately pled their Section 12 claim, thereby invoking original federal question jurisdiction" as to their first cause of action and also note that "federal question jurisdiction exists because whether Meno violated Section 5 of the Securities Act (a federal question), is the lynchpin for [their] claims for declaratory relief II-VII . . . ."  Opp'n at 4. Plaintiffs explain that they asserted "two alternative theories in the SAC:  the securities agreements provided for the sale of (1) put options or, alternatively, (2) Airbnb shares.  Regardless of which theory ultimately prevails, relief under all seven of Plaintiffs' eight claims turns on the pivotal question of whether Meno violated Section 5 of the Securities Act" (failure to register the securities).  *Id.*

Section 12 of the Securities Act, which provides that "a person who sells a security in violation of § 77e (Section 5 of the Securities Act) is liable to the purchaser to recover the consideration paid for such security."  15 U.S.C. § 77*l* [Civil Liabilities Arising in Connection With Prospectuses and Communications].  A *purchaser* of securities has standing, but a *seller* of securities does not have standing to sue under Section 12 of the Act.  *See* 15 U.S.C. § 77*l*(a) (any person who offers or sells a security in violation of section 77e shall be liable "to the person *purchasing* such security from him, who may sue either at low or in equity . . . to recover the consideration paid for such security . . . ." (Emphasis added.)  Section 5 of the Securities Act likewise states that "[u]nless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly — (1) to make use of any means or instruments of

1    transportation or communication in interstate commerce or of the mails to *sell* such a security

2    through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried

3    through the mails or in interstate commerce, by any means or instruments of transportation, any

4    such security for the *purpose of sale* or for *delivery after sale*." 15 U.S.C.A. § 77e, subd. (a)(1)-

5    (2) (emphasis added) [Prohibitions Relating to Interstate Commerce and the Mails].

6           a.   <u>Recission Under Section 12 of the Securities Act — Plaintiffs' First Cause</u>

7               <u>of Action</u>

8          As for Plaintiffs' first cause of action (recission and consideration pursuant to Section 12

9    of the Securities Act for failure to register the securities pursuant to Section 5 of the Securities

10   Act), Defendants claim that it fails to raise a federal question for several reasons. MTD at 7-12.

11   First, Defendants argue that the claim is implausible because the "Plaintiffs' allegations about 'put

12   options' contradict the plain text of the contracts." *Id*. at 8. Defendants argue that the contracts

13   are clearly forward purchase contracts in which Plaintiffs were the sellers and as such, they argue

14   that Plaintiffs are not purchasers of securities and lack statutory standing to bring their Securities

15   Act claims. *Id*. Defendants also argue that even if Plaintiffs could plausibly allege that Meno sold

16   them "put options," subject matter jurisdiction is still lacking since courts view adding a count for

17   the sole purpose of obtaining jurisdiction with skepticism. *Id*. at 10. Defendants state that

18   Plaintiffs' first cause of action seeks the same relief as the "declaratory judgment claims that

19   Plaintiffs previously pled in the last two iterations of the complaint" and as such, this remains "a

20   dispute that should be resolved in state court." *Id*. Further, Defendants argue that Plaintiffs' first

21   cause of action is time barred with respect to five of the seven contracts at issue. *Id*. at 11.

22   Finally, Defendants contend that Plaintiffs' first cause of action does not state a claim upon which

23   relief can be granted and should be dismissed under Rule 12(b)(6). *Id*. Defendants claim that,

24   "putting aside that this theory [that Plaintiffs actually bought put options] is flatly contradicted by

25   the agreements, . . . Plaintiffs do not allege any facts which would have made the sale of *put*

26   *options* subject to registration (or any other facts that would make the sale unlawful . . .)." *Id*.

27         As for Defendants' argument that that Plaintiffs Section 12 claim should be dismissed

28   under Rule 12(b)(6), Plaintiffs note that the SAC alleges that Defendants failed to register the

securities in violation of Section 5 thereby triggering liability under Section 12 and emphasize that it is Defendants who "bear the burden of establishing that the sale of securities are exempt from registration." Opp'n at 9. As such, Plaintiffs argue that their Section 12 claim is adequately pled and that federal question jurisdiction over the SAC exists. *Id*. Plaintiffs emphasize that they seek affirmative relief under Section 12 of the Securities Act since Section 12 states that a person who sells a security in violation of Section 5 is liable to the purchaser to recover the consideration paid for such security. *Id*. at 6. As such, they argue that federal question jurisdiction exists because their Section 12 claim arises under federal law and at this stage, Defendants may only challenge Plaintiffs' allegations under Rule 12(b)(6). *Id*. at 6-7.

Having reviewed the contracts, the Court finds that Plaintiffs did not purchase put options, but rather they agreed to sell shares in the future. Importantly, the contracts are titled "Forward Purchase and Sale of Securities Agreement[s]" and the "Seller" is defined in each respective contract as one of the two Plaintiffs (Hague or Pristavec) and Meno is defined as the "Purchaser." *See, e.g*., Forward Purchase and Sale of Securities Agreement; Docket No. 48-1. Moreover, throughout the contracts, it is reiterated that Meno is *purchasing* shares. *See* Forward Purchase and Sale of Securities Agreements; Docket Nos. 48-1 through 48-7. For instance, the contracts state that:

- Seller [Pristavec] desires to sell to Purchaser [Meno], and Purchaser desires to purchase from Seller . . . shares of common stock of the Company acquired by Seller. . . . Forward Purchase and Sale of Securities Agreement, Recital B.

- The purchase and sale of the Purchased Shares hereby will be subject to (i) a right of first refusal [] held by the Company as set forth in those certain agreements set forth in Schedule A attached hereto . . . which provide that before the Purchased Shares may be sold or otherwise transferred, the Company . . . shall have a right of first refusal to purchase such shares on the terms and conditions set forth in the Restriction Agreements, and (ii) one or more other restrictions or conditions on transfer of the Purchased Shares as set forth in the Restrictions Agreements . . . . (*Id.* at Recital C.)

- Purchaser desires to purchase the Purchased Shares from Seller, and Seller desires to sell and transfer such Purchased Shares to Purchaser . . . . *Id.* at Recital E.

- Seller agrees to sell, transfer and assign to Purchaser, and Purchaser agrees to purchase and acquire from Seller, . . . the Purchased Shares, at a price per share and for an aggregate purchase price for the Shares . . . . *Id.* at Agreement § 1.

- The purchase and sale price for the assignment and transfer of the Purchased Shares on the Transfer Date by Seller to Purchaser shall be . . . . *Id.* at Agreement § 2.

- The "Transfer Date" shall take place . . . on the earliest of the following to be allowed under the Transfer Restrictions:  (a) Delivery of the Purchased Shares to a confidential account of Purchaser . . . by 10:00AM on the third (3rd) business day after the expiration of the Deferral Period . . . . *Id.* at Agreement § 4.

Forward Purchase and Sale of Securities Agreement; Docket No. 48-1.  The contracts at issue -- which recite Plaintiff is selling securities to Meno – do not reference a "put" option, or even suggest that Plaintiffs are *purchasing* securities from Meno.  Notably, in a put option, the buyer pays a premium for the right (but not the obligation) to sell shares at a specified price – the option buyer has the *choice* of selling the security.  *See, e.g.*, *Applestein v. Medivation Inc.*, No. 10-CV-00998, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) ("a put option is a contract in which one party buys the right to sell particular securities at a specified price at or within a specified time to another party") (internal quotation marks and citation omitted).  Here, the plain language of the contracts confers upon Defendant (Meno) the right to purchase the sellers' shares thereby affording Meno the right to seek the extraordinary remedy of specific performance.  *See, e.g.*, Agreement § 9(c) ("Purchaser's Remedies for Seller's Breach.  Notwithstanding anything else contained in this Agreement to the contrary, Seller acknowledges and agrees that if Seller shall fail to perform any of Seller's obligations hereunder after payment obligations arise . . . Purchaser may instead exercise any other remedy available at law or in equity including by way of example only and not limitation, bringing an action for specific performance to compel Seller to perform Seller's obligation hereunder to sell and transfer to Purchaser the Purchased Shares . . . .").  There is no contractual remedy that would be correlative to Plaintiffs' alleged put option.

Because Plaintiffs did not purchase put options, but instead are sellers of securities, they are not purchasers with a right to sue the seller of securities under the Securities Act.  *See* 15 U.S.C. § 77*l*(a).  As such, Plaintiffs' first cause of action seeking recission under Section 12 of the

United States District Court
Northern District of California

1   Securities Act for failure to register under Section 5 is defective.  For the same reason, Plaintiffs'

2   claims for declaratory judgment based on violations of Section 5 of the Securities Act (causes of

3   action II-VII) are also defective.  As such, Plaintiffs fail to state a colorable Securities Act claim.

4   Viewed in light of the procedural history of this matter, the ongoing New York state court breach

5   of forward purchase contract action, and the contracts themselves, this Court concludes that the

6   assertion of Section 12 and Section 5 violations of the Securities Act is an improper attempt to

7   obtain federal subject matter jurisdiction over a state-law matter.  Plaintiffs' asserted claim as

8   purchasers under Section 12 and Section 5 are wholly frivolous.  There is no basis for federal

9   jurisdiction.

10   B.   Supplemental Jurisdiction

11        Supplemental jurisdiction over state claims exists when a federal claim is sufficiently

12   substantial to confer federal jurisdiction, and there is "a common nucleus of operative fact

13   between the state and federal claims." *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (citing

14   *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991)); *see also* 28 U.S.C. § 1367.  This

15   Court may decline to exercise supplemental jurisdiction over a state law claim if:  (1) the claim

16   raises a novel or complex issue of state law; (2) the state law claim substantially predominates

17   over the claim or claims over which the district court has original jurisdiction; (3) the district court

18   has dismissed all claims over which it has original jurisdiction; or (4) in exceptional

19   circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367.

20        Notably, supplemental jurisdiction is a doctrine of discretion, not of a plaintiff's right.  *City*

21   *of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997); *United Mine Workers of Amer.*

22   *v. Gibbs*, 383 U.S. 715, 726 (1966).  When, as here, "the federal claims are dismissed before trial,

23   even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as

24   well." *Gibbs*, 383 U.S. at 726.  Although the Supreme Court later noted that such a dismissal is

25   not "a mandatory rule to be applied inflexibly in all cases," it also recognized that, "in the usual

26   case in which all federal-law claims are eliminated before trial, the balance of factors to be

27   considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and

28   comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."

*Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).

Since all of Plaintiffs' purported "federal" claims are being dismissed, the Court declines to exercise supplemental jurisdiction over his remaining state-law claim for tortious interference with contract.

## V.      CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss for lack of subject matter jurisdiction.  Since the Court is granting Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and declining to exercise supplemental jurisdiction over the remaining state law claim, it need not address Defendants' claims for dismissal under Rule 12(b)(2) and Rule 12(b)(6).

This order disposes of Docket No. 41.  The Clerk shall enter judgment and close the case.

**IT IS SO ORDERED**.

Dated: March 25, 2022

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California